### J. L. WHITE FURNACE CO. v. C. W. MILLER TRANSFER CO.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1909.)

1. CORPORATIONS (§ 648*) — FOREIGN CORPORATIONS — CARRYING ON BUSINESS WITHIN STATE.

   General Corporation Law (Laws 1892, p. 1805, c. 687) § 15, requiring foreign corporations doing business in the state to obtain a certificate, does not apply to a foreign corporation which has no office in the state, and does no business therein other than that of furnishing and installing furnaces and doing the work under contracts.

   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 648.*]

2. CONTRACTS (§ 324*)—CONSTRUCTION—REMEDIES FOR BREACH.

   Where a contract provides a special remedy in case of breach by one of the parties, such remedy is not exclusive unless it is apparent that such was the intention of the contracting parties.

   [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 324.*]

3. MECHANICS' LIENS (§ 254*) — CONSTRUCTION OF CONTRACT — REMEDIES FOR BREACH.

   Plaintiff contracted with defendant to install two furnaces in defendant's stables, defendant to furnish proper foundations. Plaintiff guaranteed that the furnaces would generate steam to the full capacity of defendant's boilers, and that, after 30 days after the furnaces were installed, if such guaranty was not complied with, defendant "will remove material holding the same subject to our order and no payment shall be made." Held, in view of the positive guaranty of plaintiff, the large ex-

---

penditure to be made by defendant before the furnaces could be tested, the loss to defendant in taking them out, the payment by defendant of a part of the price, and his continuing to use the furnaces after they had failed to fulfill the guaranty, that defendant's· remedy for breach of the guaranty was not limited to the one set out in the contract, but that it could counterclaim for damages in an action to foreclose a mechanic's lien for the balance due on the price of the furnaces.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 254.*]

4. SALES (§ 425*)—MODIFICATION OF CONTRACT—REMEDY OF PURCHASER.

Plaintiff contracted with defendant to furnish two furnaces in defend-ant's stables, defendant to furnish proper foundations for them. Plaintiff guaranteed that the furnaces would generate steam to the full capacity of defendant's boilers, and that, after 30 days after the furnaces were in-stalled, if it was found that such guaranty was not complied with, defend-ant "will remove material holding the same subject to our order and no payment shall be made." *Held* that, if it was the intention of the parties to restrict the remedy of defendant for breach of the warranty to the one prescribed by the contract, the contract was modified in that respect by the payment of a part of the price by defendant on the assurance that the furnaces would do the work after their apparent failure so to do, and the request by plaintiff to leave the furnaces after their failure to fulfill the warranty and a further test of the furnaces, and defendant might counterclaim for damages in proceedings by plaintiff to foreclose a me-chanic's lien for the balance due on the contract.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 425.*]

Appeal from Special Term, Erie County.

Action by the J. L. White Furnace Company against the C. W. Miller Transfer Company. From a judgment of the Supreme Court· in favor of plaintiff (59 Misc. Rep. 66, 109 N. Y. Supp. 796), defend-ant appeals. Reversed.

The plaintiff is a foreign corporation, having its principal place of business at Milwaukee, Wis. The defendant is a domestic corporation, having its place of business in the city of Buffalo. The action is brought to foreclose a me-chanics' lien for the balance due upon a contract for furnishing and installing two furnaces in the defendant's stables for firing the boilers upon the prem-ises. The furnaces were constructed by the plaintiff under a written contract made between the parties. The contract provided that the defendant should furnish proper foundations for the furnaces, and that the plaintiff should fur-nish the furnaces, construct the ovens therefor, and install the same as set forth in the contract. The furnaces are described in the testimony as a "dutch oven," and located in front of the boilers. The defendant made the founda-tions and the plaintiff installed the furnaces, as the contract required, but the furnaces did not meet the requirements of the contract, and the defendant seeks to recover by way of a counterclaim the damages it has sustained. The contract contains the following provision: "We [referring to the plaintiff] guarantee that these furnaces will generate steam to the full capacity of your boilers, using a mixture of your stable manure and coal as fuel, and that no offensive odors will escape from the stack during operation, and comply with the health ordinances. If at the expiration of thirty days after the furnaces have been installed it is found that the above guarantees are not complied with, you will remove material holding same subject to our order and no pay· ment shall be· made." The trial court held that the only remedy the defend-ant has for the breach of warranty in the failure of the furnaces to meet the requirements of the contract is to remove the material and hold it subject to the order of the plaintiff, and directed a judgment in favor of the plaintiff for the balance of the purchase price. From the judgment entered upon that de-cision, this appeal is taken.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

James McCormick Mitchell, for appellant.

Thomas R. Stone, for respondent. .

KRUSE, J.  The defendant challenges the right of the plaintiff to prosecute this action because the plaintiff is a foreign stock corporation other than a monied corporation, and had no certificate as provided by section 15 of the general corporation law (Laws 1892, p. 1805, c. 687), authorizing it to do business in this state, but we think the plaintiff was not doing business in this state within the meaning of that section.  The contract was in the form of a written proposition, submitted by the president of the plaintiff, at Buffalo, in this state, to the president of the defendant, and accepted by the latter in writing, and approved by the secretary of the plaintiff in the city of Milwaukee, in the state of Wisconsin, as was usual by the plaintiff. So far as the evidence discloses, the plaintiff had no office and did no business in this state other than that of furnishing and installing the furnaces and doing the work under the contract.  We think the plaintiff was not doing business in this state within the contemplation of the section referred to.  Ozark Cooperage Company v. Quaker City Cooperage Company, 112 App. Div. 62, 98 N. Y. Supp. 113; Union Trust Company v. Sickels, 125 App. Div. 105, 109 N. Y. Supp. 262; Penn Collieries Company v. McKeever, 183 N. Y. 98, 75 N. E. 935, 2 L. R. A. (N. S.) 127.

The other question raised by the defendant is more serious.  If the defendant's only remedy for the breach of warranty is to remove the material and hold it subject to the order of the plaintiff, manifestly the defendant cannot recover upon its counterclaim, since it has not availed itself of the provision by removing the material as is therein provided.  It is undoubtedly true, as contended by the plaintiff and held by the trial court, that it was entirely competent for the parties to contract for the specific remedy of removing the furnaces and material, for a failure of the furnaces to meet the requirements of the contract, and even make the remedy exclusive.  But such a special remedy is not exclusive unless it is apparent that such was the intention of the contracting parties.  In order to determine the intention of the parties in that regard, it may be well now to refer to another provision of the contract and the surrounding circumstances. The contract required the defendant to build the foundations for the furnaces.  This and the other changes which the defendant would have to make to use the furnaces in connection with the boilers would require the expenditure of a considerable amount, and taking out and removing the furnaces in case they were not successful and up to the requirements of the contract would require a further expenditure. The contract was made in October, 1906.  The work was done in November and December, 1906, being completed on or about December 21st.  The contract price was $1,500.  Five hundred dollars was paid thereon at the plaintiff's request on that day, which was before the furnaces had been operated.  On January 28, 1907, the defendant made a further payment of $100 at the plaintiff's request.  On Jan-

uary 30, 1907, the board of health of the city warned the defendant of the offensive odors being emitted by the burning of the manure. Various interviews occurred between the presidents of the respective companies, a demand being made on behalf of the plaintiff for the balance of the contract price, and a refusal upon the part of the defendant to pay the same, upon the ground that the furnaces were not up to the requirements of the contract. There is a dispute in the evidence as to just what was said about taking out the furnaces. It is, however, a conceded fact that the furnaces were not taken out. It appears that, even before the $100 was paid, the furnaces had been operated, and that odor from the burning manure was detected, but, as the defendant's president testified, he was assured by the plaintiff's representative that it would be better, and he was assured that the furnaces would meet the requirements of the contract, and requested that the furnaces be left there for a while. On March 21, 1907, notice of lien was filed. The action was commenced April 18, 1907. After the action had been commenced, and between June 7 and July 14, 1907, an agreement was made between the parties that the furnaces should be further tested; the claim being made on behalf of the plaintiff that the defendant's workmen engaged in firing the furnaces did not properly do that work. Thereupon a further test was made by a person who was satisfactory to the defendant, with the same result as before. Offensive odors were still emitted from the stack, caused by the burning of the manure. In short, the trial judge finds that at no time did these furnaces burn all the manure, or burn it without emitting offensive odors from the stack.

We deem it unnecessary to enter into an extended argument upon the facts or an analysis of the various cases cited by counsel for the respective parties. In view of the positive guaranty of the plaintiff, the large expenditure to be made by the defendant before the test could be made to determine the efficiency of the furnaces, the loss to the defendant in taking them out, and the conduct of the parties after making the contract, we think it should not be held that it was the intention of the parties that the only remedy which the defendant should have for the failure of the furnaces to meet the requirements of the contract was to take them out and hold them subject to the order of the plaintiff. But, even if such was the intention when the contract was entered into, the payment of a part of the purchase price by the defendant upon the assurance that the furnaces would do the work as required by the contract, and the request by the plaintiff to leave the furnaces after they had been tested and found wanting, and the other circumstances in the case, to which I have alluded, modified the contract in that regard, and the plaintiff waived the right to require the defendant to remove the furnaces, and rely solely upon that remedy for the nonfulfillment of the contract upon the part of the plaintiff. In either view the conclusion follows that the defendant is not limited in its remedy, as is contended by the plaintiff, but may recover such damages as it has sustained from the failure of the plaintiff to furnish and install furnaces to meet the requirements of the contract.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.